

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 13, 1952

Hon. Gibb Gilchrist          Opinion No. V-1540
Chancellor
Texas A. & M. College        Re: Applicability of Article
  System                         2654b-1 to exemption from
College Station, Texas           tuition of certain veterans
                                 who served in the Armed
                                 Forces subsequent to July
Dear Sir:                        25, 1947.

        We refer to your request for an opinion of
this office concerning when World War II may be con-
sidered legally terminated for purposes of Section 3 of
Article 2654b-1, Vernon's Civil Statutes, the veteran
college-fee exemption statute.

        You state that the 80th Congress in Public
Law 239 declared July 25, 1947, as the date of "the
termination of any state of war theretofore declared
by Congress and of the national emergencies proclaimed
by the President on September 8, 1939, and May 27,
1941" for certain statutory purposes, among which were
Public Law 346, 78th Congress, providing Government
education benefits for World War II veterans.

        Further, you advise that following the enact-
ment of Public Law 239, the four colleges in the Texas
A. & M. College System have exempted from tuition only
those veterans who entered the armed service prior to
July 25, 1947, the effective date of that law, and who
were otherwise eligible. A. & M. College has recently
received inquiries from a young ex-serviceman who
entered the armed services subsequent to July 25, 1947,
requesting a refund of the fees he paid while he was
enrolled at A. & M. College "from September 1950 to
February 1952 including the summer of 1951." He has
pointed out that he is now enrolled in another State
college in Texas which is exempting him from the pay-
ment of fees.

In connection with these matters you submit for our opinion the following question: What date should be used for the termination of the period of service for which the tuition exemption is authorized in Section 3 of Article 2654b-1?

Article 2654b-1, Vernon's Civil Statutes, provides in part as follows:

"Section 1. The governing board of the several institutions of collegiate rank, supported in whole or in part by public funds appropriated from the State Treasury, are hereby authorized and directed to except and exempt all citizens of Texas, who have resided in Texas for a period of not less than twelve (12) months prior to the date of registration, and who served during the Spanish-American and/or during the World War as nurses or in the armed forces of the United States during the World War, and who are honorably discharged therefrom, from the payment of all dues, fees and charges whatsoever, including fees for correspondence courses; provided, however, that the foregoing exemption shall not be construed to apply to deposits, such as library, or laboratory deposits, . . . The governing boards of said institutions may and it shall be their duty to require every applicant claiming the benefit of the above exemption to submit satisfactory evidence that the applicant is a citizen of Texas and is otherwise entitled to said exemption. . . ."

In 1943, Article 2654b-1 was amended by adding thereto a new section which reads in part:

"Section 3. All the above and foregoing provisions, conditions and benefits herein-above in this Article provided in Section 1 . . . shall apply and accrue to the benefits of all nurses, members of the Women's Army Auxiliary Corps, Women's Auxiliary Volunteer Emergency Service, and all members of the United States armed forces, regardless of whether members of the United States Army or . . . Navy or . . . Coast Guard, who have,

or are now serving, or who may after the pas-
sage of this Act, serve in the armed forces of
the United States of America <u>during the pre-
sent World War Number II, being the war now
being prosecuted, and which was entered into
on or shortly after December 7, 1941, by the
United States of America against what are com-
monly known as the Axis Powers;</u> . . . "
(Emphasis added.)

In 1945, Article 2654b-1 was again amended by
the addition of a new section which reads in part as
follows:

"Section 4. The exemption from the pay-
ment of dues, fees and charges as provided
hereinabove in Section 1 and Section 3 of
this Article shall not apply to or include
honorably discharged members of such United
States Armed Forces, or other persons herein-
above named, who are eligible for education or
training benefits provided by the United States
Government under Public Law No. 16, 78th Con-
gress /Vocational rehabilitants/, or amendments
thereto, or under Public Law No. 346, 78th
Congress /World War II "G.I." educational
bill/, or amendments thereto, or any other
Federal legislation that may be in force at
the time of registration in the college con-
cerned of such ex-service man or woman. . . ."

Under Article 2654b-1, as amended, any World
War II veteran who served in the armed forces of the
United States, who is a citizen of Texas and otherwise
eligible thereunder, is entitled to claim the exemption
benefits of that statute, provided he is not eligible
for educational benefits made available by the Govern-
ment in Public Law 16 or 346, 78th Congress, or in any
other Federal legislation (e.g., Public Law 550, 82nd
Congress). Att'y Gen. Ops. O-7316 (1946), V-688 (1948),
V-1507 (1952).

Public Law 239, 80th Congress, provides that
July 25, 1947, shall be deemed the date of termination
of any state of war theretofore declared by Congress and
of the national emergencies proclaimed by the President
on September 8, 1939 and May 27, 1941, for the purposes
of Public Law 346, 78th Congress, providing Federal

educational benefits for certain World War II veterans. By virtue of Public Law 239, any person who first entered the armed services on July 26, 1947, or thereafter was rendered ineligible for Public Law 346 veteran educational benefits.

Recently, the 82nd Congress has enacted Public Law 550. It provides educational benefits to certain veterans who serve or served in the armed forces on or after June 27, 1950, the date of the President's orders for military action in South Korea. 38 U.S.C.A. foll. ch. 12, Secs. 901 et seq. The Government benefits of Public Law 550 are limited to veterans of the armed services during the Korean emergency. By virtue of the dates fixed in Public Laws 239 and 550, supra, a veteran who entered the armed services on or after July 26, 1947, and who completed his service prior to June 26, 1950, is provided no educational benefits by the Government under Public Law 346 or 550.

With respect to this class of veterans, not covered by Public Law 346 or 550, the question arises: For purposes of a proper application of Section 3 of Article 2654b-1, the Texas World War II veteran exemption statute, what is the legal date of termination of World War II? In this connection it is to be observed that no state legislation has been enacted which fixes the termination date of World War II for the purposes of Article 2654b-1. Furthermore, while the war termination date fixed in Public Law 239, supra, has specific application to Federal "G.I." benefits authorized in Public Law 346, and to certain other enumerated statutes, but this Act of Congress operated to terminate the war only with respect to the purposes specified therein.

You have suggested that since the period for accrual of educational benefits conferred by Public Law 346 was terminated on July 25, 1947, by virtue of Public Law 239 the same date should be taken as terminating the period of service for which exemptions were granted under Article 2654b-1. Since Section 3 of Article 2654 b-1 was passed before the enactment of Public Law 346, the Texas Legislature at the time of enacting this statute clearly was not correlating the time during which benefits might accrue to the dates set by later Federal enactments. In 1945, when the Legislature took cognizance of Public Law 346 in enacting Section 4 of Article 2654b-1, it did not express any intention to limit the period of service covered by Section 3 to

conform to Federal limitations on educational benefits to World War II veterans. This office has previously held that Public Law 239 has no application to the State exemption authorized in Article 2654b-1. Att'y Gen. Ltr. Op. addressed to Hon. Ernest H. Poteet, President of Texas College of Arts and Industries, dated Oct. 17, 1949. See Att'y Gen. Ltr. Op. addressed to Hon. William N. Hensley, Criminal District Attorney, Bexar County, dated June 28, 1948.

As noted in Att'y Gen. Op. O-7368 (1946), this office has held in several opinions that a war is not concluded in the legal sense until some formal action by a competent authority terminating the war and re-establishing the peace is had. Att'y Gen. Op. O-6828 (1945), V-30 (1947); Att'y Gen. Ltr. Op. to Hon. Will R. Wilson, Criminal District Attorney, Dallas County, dated October 10, 1950. It is the province of the political department of the Federal Government to determine when war legally is at an end. The Protector, 12 Wall (U.S.) 700 (1871); Perkins v. Rogers, 35 Ind. 124 (1871); Kneeland-Bigelow Co. v. Michigan Cent. R. Co., 174 N.W. 605 (Mich. Sup. 1919); Citizens Protective League v. Clark, 155 F.2d 290 (App. D. C. 1946, cert. den. 329 U.S. 787); 67 C.J. 429, War, Sec. 195.

In Citizens Protective League v. Clark, supra, decided May 2, 1946, Associate Justice Prettyman said:

"* * * No peace treaty has yet been signed with Germany, and a state of war has not been terminated by Act of Congress or by Executive Proclamation. Cases involving the termination of other wars dispose of appellants' point. It is not for the courts to determine the end of a war declared by the Congress."

In Ludecke v. Watkins, 335 U.S. 160, 170 (1948) the Supreme Court of the United States said:

"The political branch of the Government has not brought the war with Germany to an end. On the contrary, it has proclaimed that a 'state of war still exists.' Presidential Proclamation 2714, 12 Fed. Reg. 1; see Woods v. Miller Co., supra /333 U.S. 138 (1948)/, at p. 140; Fleming v. Mogawk Wrecking & Lumber Co., 331 U.S. 111, 116. * * *"

This opinion, which was rendered after the effective date of Public Law 239, did not refer to that enactment, but it is obvious that the court did not consider that law as having brought about a general termination of the state of war.

The 77th Congress of the United States, by joint resolution, formally declared a state of war between the United States and six foreign governments, Public Laws 328 (Japan, Dec. 8, 1941), 331 (Germany, Dec. 11, 1941), 332 (Italy, Dec. 11, 1941), 563 (Bulgaria, June 5, 1942), 564 (Hungary, June 5, 1942), and 565 (Rumania, June 5, 1942). President's Proclamation No. 2563, 7 F.R. 5535. On September 11, 1945, the designation of World War II was approved as the officially designated name for the then present war covering all its theatres. 10 F.R. 11881.

On February 10, 1947, at Paris, separate Treaties of Peace were concluded by designated Allied and Associated Powers, including the United States of America, with Italy, Bulgaria, Hungary and Rumania. 50 U.S.C.A. App., p. XXI.

Each of these Treaties contained a recital in the Preamble that the Allied and Associated Powers named therein

"Have therefore agreed to declare the cessation of the state of war and for this purpose to conclude the present Treaty of Peace, and have accordingly appointed the undersigned Plenipotentiaries who, after presentation of their full powers, found in good and due form, have agreed on the following provisions: . . ."

Each of these Treaties contains an Article therein, similar to Article 90 of the Treaty of Peace with Italy which reads in part as follows:

"The present treaty, . . . shall be ratified by the Allied and Associated Powers. . . . It shall come into force immediately upon the deposit of ratifications by the Union of Soviet Socialist Republics, by the United Kingdom of Great Britain and Northern Ireland, by the United States of America and by France."

See Art. 38, Bulgaria Treaty; Art. 42, Hungary Treaty, Art. 40 Rumania Treaty.

These four Peace Treaties were each ratified by the United States Senate on June 5, 1947. Congressional Record, 80th Cong., 1st Sess., pp. 6409, 6420, 6427, 6415.

The 82nd Congress of the United States, by joint resolution approved by the President on October 19, 1951 formally declared the termination of the state of war between the United States and Germany. Public Law 181, 82nd Cong., 1st Sess.; 50 U.S.C.A. App., p. XX President's Proclamations No. 2950 was issued pursuant thereto on October 24, 1951, 16 F.R. 101915; 50 U.S.C.A. App., p. XX.

A treaty of Peace with Japan was signed at San Francisco by designated plenipotentiaries on September 8, 1951. 50 U.S.C.A. App., p. XIX. Chapter 1 of Article 1 provides:

"(a) The state of war between Japan and each of the Allied Powers is terminated as from the date on which the present Treaty comes into force between Japan and the Allied Power concerned as provided for in Article 23."

Article 23 of Chapter VII, above referred to, provides in part:

"(a) The present Treaty shall be ratified by the States which sign it, including Japan, and will come into force for all the States which have then ratified it, when instruments of ratification have been deposited by Japan and by a majority, including the United States of America as the principal occupying Power, . . . "

This Treaty with Japan was ratified by the United States Senate on March 20, 1952. Congressional Record, 82nd Congress, p. 2635.

By telegram dated September 4, 1952, this office inquired of the Secretary of State, Washington, D. C., regarding the entry into force of the above enumer-

ated treaties. We quote from the letter dated September 11, 1952, in answer thereto, as follows:

"Reference is made to your telegram of September 4, 1952, in which you make certain inquiries regarding the entry into force of the peace treaties and the termination of World War II.

"The Treaty of Peace with Japan, signed at San Francisco on September 8, 1951, was approved by the Senate on March 20, 1952 and ratified by the President on April 15, 1952. The Treaty came into force on April 28, 1952, the date on which a majority of the States, including the United States, deposited instruments of ratification as provided in Article 23 of the Treaty. The President on that same day, April 28, 1952, proclaimed the Treaty and the termination of the state of war with Japan. . . .

"The treaties of peace with Italy, Bulgaria, Hungary, and Rumania, signed at Paris on February 10, 1947, were approved by the Senate on June 5, 1947, and ratified by the President on June 14, 1947. The treaties came into force on September 15, 1947, the date on which, with respect to the Italian treaty, instruments of ratification were deposited by the United States, the United Kingdom, France, and the Soviet Union, and, with respect to the Bulgarian, Hungarian, and Rumanian treaties, instruments of ratification were deposited by the United States, the United Kingdom, and the Soviet Union. On September 15, 1947, the President proclaimed each of the aforementioned peace treaties and the termination of the states of war with Italy, Bulgaria, Hungary, and Rumania. The text of each of those proclamations may be found in 61 Stat. 1246-1754, 1758-1912, 1916-2062, and 2066-2227.

"The state of war between the United States and Germany was terminated on October 19, 1951, pursuant to House Joint Resolution No. 289, approved October 19, 1951, entitled

'Joint Resolution to Terminate the State of War Between the United States and the Government of Germany' (Public Law 181, 82d Congress). This termination was proclaimed by the President in his proclamation No. 2950 of October 24, 1951, which may be found on page 51 of Volume 3, 1951 Supplement, of the Code of Federal Regulations."

It being within the province of the political department of the Federal Government to determine when war legally is at an end, we think that the war designated as World War II was thus officially determined to be terminated when the Treaty of Peace with Japan, the last of the Axis powers, came into force, which treaty, as above indicated, came into force on April 28, 1952.

The Legislature of this State not having officially designated the date of the termination of World War II for purposes of Article 2654b-1, supra, the date of the legal termination of a state of war with the powers involved in World War II is the date that the Legislature must have intended as the date of termination of the benefits therein afforded. Accordingly, it is the opinion of this office that April 28, 1952, is the date which should be used as the date of termination for the tuition exemption authorized in Section 3 of Article 2654b-1, V.C.S.

## SUMMARY

The date which should be used for the termination of World War II for the purpose of determining eligibility for the tuition exemption authorized World War II veterans in Section 3 of Article 2654b-1, V.C.S., is April 28, 1952.

APPROVED:

Mary K. Wall
Reviewing Assistant

Charles D. Mathews
First Assistant

CEO:am

Yours very truly,

PRICE DANIEL
Attorney General

By *J. C. Davis, Jr.*
J. C. Davis, Jr.
Assistant